May it please the Court, my name is Matthew Estes, I'm representing the Petitioner Anne Whiteman. I want to start by focusing on the issues regarding the Settlement Agreement and what we believe is substantial evidence of coercion and duress, which was discounted by the Board in this case. Specifically, the Board's reliance, in this case on the alleged alternative choice, i.e. proceeding with litigation, appears to eviscerate, in our opinion, any future claims to invalidate settlement agreements on grounds of coercion or duress. Well, I mean, suppose we don't have a situation here in which the Settlement Agreement itself was brought about by coercion. In other words, say the supervisor wasn't saying to the employee, if you don't enter into the Settlement Agreement, I'm going to do bad things to you. That would be a situation in which there was duress directly related to the Settlement Agreement, right? Yes, and that situation would be directly related to the Settlement Agreement. I think here, though, there's evidence that part of the Settlement Agreement and the major part for the agency was insisting that Ms. Whiteman be removed from the radar room to the tower. That was a precondition for them doing an investigation of her allegations. It was a precondition for essentially resolving the harassment and threats that she was facing. It was presented to her prior to the Settlement Agreement. It was made clear to her that if she didn't accept this, that these issues would not be addressed, that she would continue to face the threats, threats on her life, potentially threats to members of the public in the airplanes. The situation was that there was coercion and duress, we would argue, in getting her to agree to that Settlement Agreement. She was left with no other choice because of the circumstances created by the agency. But doesn't that suggest that any Settlement Agreement that is based on allegations or the harassment created an intolerable working condition and the settlement should fall? I mean, it seems to me you'd be creating a situation where you couldn't have any settlements. Well, I disagree, Your Honor. I think that the key distinction is that you have to look at each case, the circumstances of each case on a case-by-case basis. And certainly, yes, there's always going to be cases if there are allegations of harassment that, I guess, a compellant or an employee could claim that they were coerced. But the distinction here is that nothing was being done. And you see that in the Bates case as well. The agency was not willing to do anything to address these issues. They were allowing them to go on and essentially fostering this environment of harassment that left Ms. Whiteman with no option but to agree to that settlement, which moved her out of that radar room. I think another factor that you have to look in, and again, it's a case-by-case basis, is she was stuck in a situation where they had actually, at that point, put her in a room. She was locked in that room all day. All she could do was go to the restroom. She was being supervised, stripped of all her duties. She was in a situation where she had no more options. And that's not going to be in every case. It's a high burden for a reason, and it's a rare situation. But looking at the circumstances of this case, I think it's clear and there's risk of continued threats, continued harassment, potentially. I mean, things were escalating. But there's no proof that they were trying to coerce her to settle, is there? Well, I think you can derive that coercion from the fact that they were refusing to investigate, that they were impeding the attempts by the police to investigate allegation of assault, that they were not doing anything to address the day-to-day harassment that she was facing. They were not doing anything to address the... That's the basis for the complaints that were settled, right? I mean, that was exactly what she was alleging that led to the settlement. In her EEO claims, yes, there was allegations of harassment, but the issues regarding assault and some of the operational errors in terms of, for instance, in November 2002, when she was another air traffic controller, essentially averted an airplane into her airplane's airspace, potentially causing an accident. But that's what she was complaining about. That was not... Those complaints that were settled, right? No, her EEO complaints were what was settled, and she waived, the agency claims she waived all claims that she had at that point, but those complaints... So all of those complaints were settled. They were... She hadn't made complaints in a formal setting regarding that most recent harassment. At the time, she was represented by counsel, was she not? She was represented by counsel, yes. So she had counsel, she had advice, she also got a lot of benefits out of the settlement agreement. Well, I think she did receive some benefits. I mean, there was some payment of attorney's fees, although they were not in full. There was some leave restored, although most of that leave was related to leave that she had to take because of... Priority consideration for promotion. She did receive priority consideration. But I think there's an error in saying that any time... Because, again, I go back to any time there's a settlement agreement, there's going to be some benefits to the employee. Every settlement agreement has two sides to it. So there is going to be some benefit to every employee anytime there's a settlement agreement. But if that is used as a basis to say, well, the employee got something for it, so it couldn't possibly be the product of coercion, just like when I started saying that, well, the option that she could continue to litigate, well, those options are always going to be in place in every settlement agreement. And if that's a basis for saying just on those grounds that, well, we're not going to find coercion, it's difficult to see any case, and I think this is one of the strongest, if this isn't coercion and this isn't a situation where it would be a reasonable person in her position would feel no choice but to accept the settlement agreement. At one point, counsel, she was seeking for prior consideration for the new job opening. At that time, she's asserting the validity of the agreement. She's relying on the validity of the agreement, and at that point, she's not asserting that she was coerced into entering the agreement. Yes, Your Honor, she did attempt to enforce the agreement. Isn't that a problem for us? At one point, she asserts a validity of the agreement, and then later on she's seeking to avoid the same agreement that she sought to be valid? I think it's relevant. I don't think it's controlling, and I think the other circumstances indicate at the time she accepted that agreement that it was a product of coercion. Again, especially in this case, and it may not be the same in all cases because some, certainly with a resignation or a settlement where there's a resignation, they separate from the agency altogether. In this case, it was essentially removing you from the radar room to the tower, and away from the harassment or away from the death threats. If she, at that point, immediately comes out and says, well, this is a product of coercion. I didn't want to do this. This wasn't voluntary. Well, they put her right back in that harassing situation. So she's put back right into the situation that she had no choice but to get out of. Under your theory, how could the government ever settle a case? Because every settlement of harassment claims could then be attacked later on, on the ground that they were the product of coercion. What's the government supposed to do? How can these cases ever be settled? As Judge O'Malley points out, the petitioner here is represented by counsel. How can you ever settle one of these cases without thinking, oh, well, later on they're going to try to set it aside? Your Honor, I don't think every case, and I don't think most cases, and the vast majority of cases— Well, let's talk about how could you settle this case. Under your theory, how could this case have ever been settled? Well, certainly I think if it was a settlement that wasn't motivated by coercion on the part of the agency towards Ms. Whiteman, and specifically if it's a situation where— Let me answer the question. How could this case be settled? Under your theory, she was in tolerable working condition. She had to settle. So how could a binding settlement ever be reached under those circumstances if the coercion that led to the settlement could be the basis for setting it aside? Well, I think in this case it would have to be a situation where the settlement agreement wasn't a requirement for them to address the issues of harassment, to deal with the employees who were threatening her life, to get her out of a— I'm sorry. I don't understand what you're saying. You're saying that a different settlement agreement would survive? What difference? The difference would be that the settlement agreement itself, and Ms. Whiteman agreeing to that settlement agreement, wasn't the requirement or wasn't her agreeing to that. I guess, let me say that. The agency addressing the harassment was contingent on her accepting that agreement and being moved out of that radar room. That was their requirement in order to fully investigate these claims, take action against the individuals who were threatening her. Otherwise, they were going to allow it to go on. So in a situation where they were, these acts of harassment had happened, they were addressing them, and the agreement wasn't the requirement for her to get some relief from the day-to-day harassment, from the death threats, from the potential harm to the public in terms of the aircraft, in that type of situation where she doesn't have to agree to the settlement to get out of that intolerable situation, then I don't think there's any claim, any legitimate claim that— voluntarily without entering into a settlement agreement. I don't think that she needs to be getting the relief to then enter into the settlement agreement. Just addressing and taking the claim seriously and looking into them and not locking her in a room is a different—that isn't the relief she was seeking. Stopping it or providing her some remedy for that relief, that harassment, whether it's monetary damages or some disciplinary action against the individuals who did it, you don't have to go that far for the agency to then claim that it wasn't a part of coercion. But they have to be doing something to address those situations. And again, I would compare it to the Bates situation. I know it's a resignation as opposed to settlement. Didn't the client make a choice whether to enter into this agreement or not? And when I look at the agreement, and it says that in exchange for the consideration here and stated the complainant agrees to waive any and all claims against the United States, and it goes on—you're familiar with that part of the agreement. I'm looking at 835. Then it goes on and says, by executing the settlement agreement, the complainant acknowledges that this is not the result of any duress or bad faith negotiations. And so she got something in return for that, and she made the choice that she would give up her position or to be in place to further pursue these bad conditions that you're talking about. How do we look past that, that she made that choice? Well, again, I think you have to look at all the circumstances and make the judgment that that was not a considered choice among reasonable options, that a reasonable person in her position would consider the option of turning down that settlement agreement given all the circumstances. And I don't think an agency putting in what is now essentially a bullet play clause in most settlement agreements that this is not the product of duress or coercion is controlling. If that were the case, then it would be— the agencies could put that into every settlement agreement they ever have signed, and then that would resolve the defense of coercion or duress. I mean, there's always going to be an alternative to settlement. Don't you have a problem with the standard of review here, though? I mean, even if we were to say, if we were the trier of first resort, that we might agree with you, all we have to find is that there's substantial evidence to support the decision that was made. And in this case, as you pointed out, there were several things that were cited in terms of benefits that she received and the fact that she was represented by counsel. I mean, there's a lot of factors that actually support the conclusion that, in fact, it was a voluntary agreement on her part. Well, I don't think the evidence that the court has relied on, the board has relied on, is substantial enough to reach that finding. I mean, I think they're relying on, again, boilerplate language in a settlement agreement, and they fail to take into account the circumstances which I think are much more relevant in terms of what the conditions were at the time she agreed to that settlement and signed that settlement. So you're saying that there is evidence of voluntariness, but you just don't think it's substantial enough? I don't think that there – I think you can look at the fact that, yes, the agreement says these things, but I don't think that is nearly – I don't think that constitutes substantial evidence. And I think that you have to look at the circumstances of the case. Well, even putting aside the boilerplate language in the agreement, what about the fact that she had counsel and she received several benefits in return? Well, again, I would point to the fact that every agreement is going to have some benefit to the person who signs it. And whether you're represented by counsel or not, that fact in and of itself, or even with the boilerplate language, I don't think is substantial evidence that there's not – that she can't meet her burden that there's coercion and that it was an involuntary agreement. And, again, the court – or the board focuses on the fact that, well, she had the option, and that dichotomy of, well, you have an option to accept the settlement agreement or continue to litigate. And putting it on those terms, there's always going to be an option to continue to litigate. And relying on that as, well, she had two choices, I don't think it's fair. I don't think it's supported by substantial evidence. And I think it ignores the evidence that – the overwhelming evidence that this was a product of coercion. I also think the board failed and the administrative judge failed in holding a jurisdictional hearing on this case. I think the – a panel member, Ms. Whiteman, the petitioner here, made non-fellows allegations to establish the issue of voluntariness or lack of voluntariness. And I think that should have been taken up as a jurisdictional hearing to determine whether she could prove that the agreement was involuntary by a preponderance of the evidence. That never happened. And that, I think, impacted the administrative judge's and the board's ability to rule on that issue and determine all – and really weigh all of the evidence. And I think that's where you – Before you sit down, I want to ask you one or two questions about this second claim here. Yes, Your Honor. If I understand correctly, you agree that this – the job opening should have been reposted as a result of the first offering having been improperly gone beyond her and to the general employee base at large. And in December, she was offered a post, right? And this job was available in January, correct? She was offered priority – Priority consideration for the January post. Yes. And you're not objecting to that. You're objecting to the delay between January and April in making a decision with respect to her consideration, correct? The issue is the delay in getting that offer of priority consideration to and offering the position up and then having to pull back. We believe there is evidence of that. But is it the delay between December and April or January and April? Both are issues that we believe were motivated by whistleblower retaliation. Okay. So what evidence did you submit to the MSPB that the delay was the result of retaliation? I don't believe, other than the timing of that action and the fact that they knew that she was supposed to be getting it, that her supervisor who was involved in the settlement agreement was involved in providing her – should have been involved in providing her priority consideration if they hadn't. That was the evidence that there was that connection. Now, it wasn't. That issue was decided, as you know, on collateral estoppel and precluded on that basis, which is what we don't think is in accordance at all. How much – what's the maximum period of back pay that she could seek under your theory? I think the maximum would likely be the – from, I guess, would be January 4th until April 4th. But there still would have been some period of delay between when she was first offered the priority position and when it was processed, right? Well, the 90 to 120 days I think is misleading. I mean, that's what typically is required in a case where they're weighing, you know, multiple candidates and there's that type of review. When it's priority consideration, it was submitted to the selecting official on December 9th, and she was already found to be qualified. I think that that delay from December 9th to April 4th, that's an unreasonable delay out of the circumstances when the position became vacant less than a month later. An unreasonable delay or delay that leads to an inference of retaliation? I think that the timing, of course, you know, there hasn't been discovery on this issue, but the timing of it and the unreasonableness of the timing in relation to her prior complaints and prior disclosures and the unreasonableness of the delay leads to the inference, at least as a non-fraudless allegation. Didn't you seek this back pay in district court? Ms. Whiteman did seek back pay. That issue, the district court focused more on the fact that priority consideration, as provided in the settlement agreement, didn't relate to the timing of when it occurred. And I think that's why it shouldn't be precluded from being an issue in this case. I'm sorry. Go ahead. You didn't appeal the district court determination? Ms. Whiteman did not, no. At that point, she no longer had counsel. Her counsel actually was disqualified during that case, and she did not appeal that now. The district court theory was that the delay violated the settlement agreement. Yes, and I don't think there's, and I think the court correctly decided that the agreement only provided for priority consideration. It didn't provide for a timely promotion or a promotion at all, for that matter. And so the issue of the promotion and when that occurred was completely unrelated to the settlement agreement. Okay. Any other questions? Thank you, Mr. Estes. We'll give you two minutes for rebuttal. Thank you very much. May it please the Court. This case is about Ms. Whiteman's desire to relitigate her claims against the FAA for retaliation for whistleblowing. Wait, wait. How can that be? The district court didn't have any jurisdiction over retaliation claims for whistleblowing, did it? They didn't specifically, the district court, you're correct, did not specifically address whistleblowing claims for retaliation. However, as part of the district court's findings, and this is in the appendix on 30 and 40, the district court made a factual finding that Ms. Whiteman suffered no damages because her promotion was accomplished within the normal 90 to 120-day timeframe and that she did not suffer any loss of pay. So if there's no delay, then there's no action or retaliating action under the whistleblowing framework. So that factual finding is salient to both claims. So we're not arguing that the district court made a specific finding as to whistleblowing retaliation, but that the factual finding that there is no delay and no damages is dispositive of the whistleblowing retaliation claim. But it's a little bit difficult here. I mean, you're saying you're relying on what you call to be factual findings by the district court, but the district court ultimately dismissed the case for lack of jurisdiction. So how are those factual findings even meaningful? Well, there is case law, as stated in our brief, Ross v. McAllister, that a court has jurisdiction to determine its own jurisdiction. And so that factual finding in making that assessment can be entitled to collateral estoppel or preclusive effect. For example, in Ross v. McAllister, in a New Jersey court, a company claimed that a seaman acted in one role. And then later in district court in New York, they claimed he acted in another role. The New Jersey court had dismissed because finding he was not an employee. But then they couldn't claim that he served another role in the district court. So that factual finding the Second Circuit held was entitled to preclusive effect. So how was the finding of no damage irrelevant to a jurisdictional holding? That's because the district court did find that the claim was moot as opposed to finding some other thing. The actual holding was that it was moot because she suffered no damages and that she received the priority consideration as she was due under the settlement agreement, which is distinct than if the district court had stated, well, for example, this is over the jurisdictional limit. And this is, in fact, a tech fact. Well, courts, district courts, are always allowed to look at factual issues if it's necessary to resolve them for purposes of determining their jurisdiction. Here, the question was, does the court have jurisdiction over a settlement agreement? And when the court ultimately said, I don't have jurisdiction over this settlement agreement because the settlement agreement wasn't breached, wasn't that really a summary judgment determination? Meaning that if you're going to talk about collateral estoppel, you have to decide whether or not she had a full and fair opportunity to really litigate that issue. The court did do it in the context of mootness, but in the district court proceedings, Ms. Whiteman was afforded an opportunity to respond to the government's motion to dismiss. There were affidavits submitted, so there was some litigation of that issue. It wasn't merely that the government raised the issue and then in a summary order, the district court dismissed her case. Instead, there was a motion to dismiss. There was a response. The magistrate judge issued proposed findings. Ms. Whiteman did submit objections to those findings and submitted her own evidence before the district court adopted it. So what happened here was more tantamount to the consideration on something like summary judgment than just a plain sui sponte dismissal. Well, that may be true, but at a minimum, it seems to me that the district court's decision was based on two alternative grounds. One, that she didn't have any further rights under the settlement agreement, and second, to interpret it generously, that there wasn't any damage. And under the second restatement, where you have alternative grounds, you can't rely on collateral estoppel as to one of them. And we've, I think, approved the second restatement. How do you get out of that? Meaning you would say the no damages is actually dicta as opposed to the holdings. Well, not dicta. It's an alternative holding. And the second restatement says if you have alternative holdings, you can't have collateral estoppel. Again, we go back to the fact that the factual issue was litigated and decided. Yeah, but that's exactly what the second restatement's dealing with, is the issue's decided, but it's an alternative ground. That's a problem. What about the settlement agreement? What's the government's position as to whether settlement agreements like this are enforceable or whether you have to inquire into the question of whether the duress that led to the settlement might have affected the settlement? With respect to, I guess, the first point, whether the settlement agreement is enforceable, there was substantial evidence to support the MSPB holding. And specifically, although Petitioner has argued that in some cases you could prove duress, here there are five specific facts to kind of support the holding that there was no duress. One is the language of the agreement, which this Court has noted, that it was made... I'm starting you out on a broader question. Does the government believe that... Suppose someone claims workplace harassment. There's no allegation that there was harassment specifically designed to require a settlement. It's just a workplace harassment. There's a settlement and then a contention that the settlement was under duress because the harassment was so bad that she had no choice other than to settle. Does the government believe that that states a claim? Or is the government's position that a settlement agreement is a settlement agreement unless you can show that the settlement agreement itself was a product of duress directed to bringing about the settlement, that there's no claim? What's the government's position? The latter. The latter, that a settlement agreement is a settlement agreement. And then unless you can bring or show facts that show that there was actual duress with respect to the settlement agreement, that even though it's a claim of harassment, the settlement agreement should still be considered valid. Otherwise, as this Court has noted, then the settlement agreements would be almost useless in almost every case and subject to some kind of challenge in every single proceeding. And here, the equities and the facts and the circumstances surrounding the entry into this settlement agreement show that the correct result in this case is to honor the settlement agreement. First, there's the language in the settlement agreement, which this Court has pointed out. Second, as this Court has noted, she was represented by— What about the surrounding circumstances that they entered into the settlement agreement? And the record shows that the claimant claims that she was kept in a room for two days, practically locked, I don't know, but that she was kept in a room and stripped of her duties, her responsibilities, and this is following her allegations or her disclosures of what's really troubling safety concerns in the airspace of America. And she says that the only way that I could stop or get them to address those questions is by entering into this settlement agreement. Why isn't that coercion? Why wasn't she put in a position that she could not really—she had no choice? Well, again, those are bare allegations, and also in her declaration, she acknowledges that the Office of the Inspector General and various components of the FAA were indeed looking into her allegations. In fact, on page 59 of the record, in her affidavit, she states that she asked to be put on administrative leave. So when she was put on administrative leave, which happened on— and she admits on page 63 of the record, then it's unclear why that— the implication is that that is punitive or in retaliation for her whistleblowing, when she had, in fact, asked to be put on administrative leave so that she could be out of the situation. By every indication, the FAA was actually investigating her complaints and seeking to resolve them independent of what was happening with her EEO complaints. So, again, I mean, this court doesn't necessarily look at these facts de novo, but there is evidence in the record that the government was indeed investigating her complaints and put her on administrative leave at her request, not as some kind of condition to entering into this settlement agreement. Was being placed in a room and have somebody watching you and you're only let out for breaks, that's administrative leave? Again, it was administrative leave because she had stated that she felt unsafe in her past environment, which she laid out in detail in her declaration. Again, she didn't know how long she would be in that situation, but there's no indication that she would be put in there indefinitely. At that particular point, I think that the government was trying to respect Ms. Whiteman's wishes and her safety as opposed to trying to coerce her into entering into any sort of settlement with the government. And as this court has noted, there's another point, which is that she tried to enforce the settlement agreement in 2004. So the very agreement now that she says she was coerced into and that is invalid, she in fact went into district court and tried to sue to coerce its provisions. It appears that Ms. Whiteman does not want to accept the benefits of the agreement. She has not claimed that she should return the 400 hours of restored leave or the annual leave, or that she should refund her attorney's fees and start over. What she's claiming is that she wants to dispense with the parts of the settlement agreement that now she doesn't agree with, which is completely different than from the beginning, her claiming that there was coercion in entering into the settlement agreement. And finally, as has been pointed out, she did receive benefits. I mean, this settlement agreement benefited her as much as it did the agency. She received priority consideration from the promotion. And as stated before, she's not asking now to undo the priority consideration that she received. She received the leave, I mean, 400 hours, which is thousands of dollars. Attorney's fees, $7,500. So she received substantial benefits from this settlement agreement. And based on those facts and that evidence, then the MSPB properly found that she could not support her allegation that the settlement agreement was indeed involuntarily entered into. Let me ask you, if she had been hypothetically offered the position before the vacancy occurred, so that the minute the vacancy occurred, she would have received the position, what salary level would she have gotten at that point under those circumstances? There was a supervisor's salary. It appears in her district court complaint that the FAA in 2003 in December started recalculating how it gave supervisors pay. But already in January, when the position became vacant, she would have received the same salary that she received in April 2004. So that's my question. Is the salary dictated by the date on which the vacancy occurs or by the date on which the offer to fill the vacancy is made? On the date at which the vacancy occurred, because she would not have been holding the position at that time. Okay. So the salary went down in December? Yes, Your Honor. Or it was calculated differently. So the effect to her was that it went down. I don't understand. Mr. Estes can correct me on this. I don't understand that they're now complaining about the differential rate of the salary. My understanding is they're saying that the delay between January and April deprived her of earnings that she would have had if she'd had an earlier start date. Well, it's really… And that's what you understand them to be saying? Yes, and that's good. I mean, it's really unclear because in her MSPB action in the initial complaint, she claims that there is a $700,000 – over $700,000 difference in pay that she would be entitled to under her whistleblowing action. So in order to reach that figure, it appears that there is some claim for differential in pay, but it's not clear from the briefing what amount they're actually seeking now. Okay. There are no other questions. We request that you affirm the Board's decision and sign that the Board properly dismissed with Ms. Whiteman's appeal. Thank you, Ms. Grisby. Just so that we're clear about the last point, Mr. Estes, is the claim for salary that she would have earned between January and April and not that she was entitled to a higher rate of pay? The claim in her district court complaint was that the rate of pay was impacted, and there's evidence she submitted on that. I believe the claim now is that – and I believe that the whistleblower aspect of it is that that delay resulted in a three-months lost pay, and she did raise that as well. So there's no claim now that she was entitled to a higher rate of pay? No, I don't think that that is the base of her claim. That's not what she's asking for here. And to the extent that's what the calculation looks like, it should be revised. So we're talking about the difference between the pay she was receiving and the pay she would have received had she gone to promotion for those three months or worked in that – Yeah, for that one issue, that is the extent of the damages. But what's that amount? That amount, I don't know the exact calculation. I believe the raise was 4.2 percent. So a 4.2 percent raise as getting to the supervisory position for those three months. For three months. And I apologize, I don't know the exact calculation on those damages. To close here, I just want to focus again on the circumstances, which I think were directly related to her signing that settlement agreement. I don't believe there's evidence in the record that suggests that the agency was investigating these allegations of harassment and death threats and assault. To the contrary, the declaration of Ms. Whiteman clearly states that even the agency's own IG investigator had explained to her that while she was there, they couldn't do anything to investigate the claims. They were being blocked. They couldn't send people to jail, was a direct quote from her that she recalled the investigator saying.  We're not going to address the fact that your life's being threatened. We're witnessing these operational errors, putting aircrafts in danger. We're not going to do anything about that. We're going to obstruct the police. And we're going to tell you that you have to get out of here before we're going to do anything about that. And then on top of that, they then, not at her request, they put her in her locker room, put her under a supervisory monitor, tell her that she's only allowed to leave to go to the bathroom, that she has no assigned duties, and when she asks how long that's going to last, they don't have an answer for her. And that happens days before they basically tell her that here's the settlement agreement, you have to leave the radar room. If you don't do that, that's the only option. If you don't do that, we're not going to be able to do anything to address all of these issues of harassment. And again, not all of those were part of the EO complaints. They were just the general day-to-day harassment. Let's go back to the delay issue. The vacancy was announced in October, and it was filled in January, January 1. In January 8, by my calculations, 90 days. And under the regulation, it's 90 to 120 days. So it seems that the government came in at the earliest moment with respect to the regulation. How is that unreasonable? Your Honor, it's not correct that they gave her the position in January. No, it was announced in January. It was announced in October. They then pulled it back. Then there was a month delay in getting the letter to her. She agreed to it. By December 9, they had already given her priority consideration to the selecting official and said she was qualified, and all that was left was to make that selection. And then there was a delay until April. Wasn't there somebody in that position during the month of January? Only until January 3. So January 4, she could have taken over that position. It was unencumbered as of January 4. So shouldn't we be looking from January to April, as opposed from October to whenever the position was filled? And that is what the claim is, is that the damages were the January 4 until April 4, that difference in pay for the pay increase she would have received. And you're saying that by January, the normal processing time of 90 to 120 days would have been completed, or are you saying that that processing time shouldn't apply since she was entitled to the priority consideration? 90 to 120 days is the time it's going to take them to determine based on a number of candidates. Usually they have a host of candidates that they then have to narrow down to five or three, make a best qualified list, then determine that, maybe interviews. That's where the 90 to 120 days comes in. In this case, where it's only one candidate, that's the only one that's going to be considered. She's already been determined to be qualified. The vacancy was announced on October 8. Her attorney was contacted the following day or two days after that. So we're looking at almost immediate notice that you're going to get priority consideration if you want it. Yes, but then the delay in making that happen. And that's the thing, it's not the delay in giving the priority consideration. Where in the agreement does it say that priority consideration must occur or you must get the job within X amount of days? It doesn't, and that's why this is not a claim that it's a breach of the settlement agreement, that the delay was a breach of the settlement agreement. It's not. It's a breach of the regulation? It is a failure to timely take a personnel action in retaliation. You're claiming that the delay was the result of retaliation. Exactly, yes. And the problem is your only evidence of that for the moment is the delay itself. With the delay, the connection in time between her whistleblower disclosures and when that delay happened, and the fact that delay is unreasonable and not in accordance with what we argue should have happened. And for a non-freelance allegation to find jurisdiction, we believe that that should be sufficient at this stage. What was her salary as of April? I apologize, I don't know. You don't even know the base salary? I don't know what her base salary is. I know that the difference, I believe the difference was 4.2 percent or the raise she would have received. Thank you, Mr. Estes. Thank you. And we thank both counsel. The case is submitted.